# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-KA-00282-SCT

*WILLIAM THOMAS ROLLINS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/15/2006 |
| TRIAL JUDGE: | HON. MICHAEL M. TAYLOR |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LOUIS IVAN BURGHARD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: STEPHANIE BRELAND WOOD |
| DISTRICT ATTORNEY: | DEWITT "DEE" BATES, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/13/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND RANDOLPH, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.    William Thomas Rollins was convicted of one count of sexual battery, one count of touching a child for lustful purposes, and two counts of contributing to the delinquency of a minor in the Circuit Court of Lincoln County, Judge Michael M. Taylor, presiding. Rollins appeals to this court, arguing that he is entitled to a new trial because he was denied his constitutional right to confront the witnesses against him. Finding no error, we affirm.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.      On April 13, 2006, the Lincoln County Grand Jury handed down a multi-count indictment charging thirty-nine-year-old William Thomas Rollins with the following: (1) one count of sexual battery by inserting his finger into the vagina of an eleven-year-old, in violation of Miss. Code Ann. § 97-3-95 (Rev. 2006); (2) one count of touching a child for lustful purposes by rubbing the child's breasts and genital area in violation of Miss. Code Ann. § 97-5-23 (Rev. 2006); and (3) two counts of contributing to the delinquency of a minor by routinely playing strip poker with the eleven-year-old and a twelve-year-old, in violation of Miss. Code Ann. § 97-5-39(1) (Rev. 2006).

¶3.      On October 27, 2006, the State submitted a Motion for Use of Closed Circuit Television[1] pursuant to Miss. R. Evid. 617, as the means of presenting the testimony of the minor children to the jury, which motion was granted by the trial court.[2]  A jury trial was conducted on November 8-10, 2006, during which the trial judge permitted the minor

---

[1]A copy of this motion appears in the record, but does not contain the circuit clerk's file stamp.  A hearing on this motion was scheduled to be held on November 6, 2006. However, a transcript of this hearing was not included in the record.

[2]In addition to the testimony of the minor children, the other witnesses who testified in the State's case-in-chief were Judy Wilson, a licensed social worker who worked in the Family and Children Services Division of the Mississippi Department of Human Services; Rodney Foster, a criminal investigator with the Lincoln County Sheriff's Department; Brook Thornton, a mental health therapist; Johnny Hall, an employee with the Lincoln County Sheriff's Department; and Dr. Catherine Dixon, a licensed psychologist who was the clinical director of the Mississippi Children's Advocacy Center in Jackson.

children to testify via closed-circuit television. Technical difficulties with the video/audio equipment occurred during the first child's testimony.

¶4. After the problem was remedied, the prosecution repeated the questions to the witness in an effort to assure that the jury heard the questions and answers. The second child then testified, and more technical difficulties occurred. Again, after curing the problem, the prosecution followed the same procedure with that child as with the other child. At the conclusion of the testimony of the two minors, the trial judge made the following findings on the record, outside the presence of the jury:

> THE COURT: Before we get the jury in, I want to go on the record and clarify the record a little bit. We had just taken testimony in chambers from two child witnesses. The testimony was taken in the presence of a representative from the District Attorney's office and Defense counsel, the Judge, and court reporter. The defendant was in an adjacent room and was able to communicate with his attorney by telephone.
>
> And in order to satisfy the confrontation issues – Mr. Burghard was – Defense counsel, Mr. Burghard, was allowed to leave the room and confer with his client at various times upon his request during the testimony and before cross-examination.
>
> And there was not – and the cameras were set in such a way so it was not apparent to the jury that the defendant was not in the room. A camera was trained on the witnesses, and the other participants in the room were not visible.
>
> And during the testimony it was difficult to confer off the record for fear that what we talked about would be broadcast in the courtroom. And so counsel and the Judge exited the room to take up a couple of objections.

Counsel for Rollins then moved for a mistrial, arguing that Rollins was denied his federal constitutional right to confront the witnesses against him, which motion the trial court denied with the following discussion on the record.

> THE COURT: The Court is going to deny the motion for mistrial. The Court specifically would note that during the motion hearing, counsel did not – counsel for the Defense abandoned his position that the testimony had to be taken in open court.
>
> The Court at all times – every time the – every time, Mr. Burghard, you requested a break, the Court gave it to you.[3] In fact, you had more time to confer with your client than you would have had in the ordinary courtroom testimony setting.
>
> And the communication problems, for the record, dealt with transmitting the information to the jury. And the Court was in touch with the court administrator in the courtroom at all times. So when the problem arose, I was informed of it and could take corrective measures.
>
> I don't believe there was any such communication problem with the sound system that the defendant was listening to. I could hear the echo from that, sitting in chambers, while we were taking the testimony. Those speakers functioned. The problem was transmitting it across the hall to the courtroom.
>
> So I don't find there was any Constitutional problem. Further, that particular objection is not timely. The Court, had it been made earlier, could have had a chance to have the testimony taken in open court. And that opportunity is gone now. The witnesses have testified. And so even if I think it was meritorious, I would find that it was not timely made, coming as it does after the testimony, instead of prior to the taking of that testimony. And I understand that you could not necessarily have anticipated –
>
> MR. BURGHARD: It is based on the technical problem, not the actual events. We don't have a problem with – we are not objecting, based on the way that everything was set up.

---

[3]The trial transcript reflects a minimum of four times that the Court went off the record for a break.

THE COURT: All right. I will deny the motion for mistrial.

MS. JONES[4]: And just to note for the record, when I was examining [one child] and was notified of a problem, I tried to repeat the questions to make sure the jury heard all of them.

MR. BURGHARD: And I will stipulate to that fact.

¶5. After the State rested following its case-in-chief, Rollins moved for a directed verdict, and in the alternative, moved to dismiss the sexual-battery charge. During the course of the arguments on these motions, the State moved to amend the indictment against Rollins as to Count I. The State had alleged sexual battery in which Rollins inserted his finger into the eleven-year-old's vagina. The amendment instead alleged that Rollins inserted his penis into her mouth. The trial court took these motions under advisement and directed Rollins to go forward with his case-in-chief. After resting his case-in-chief, Rollins, through counsel, moved for a mistrial on the basis of Miss. R. Evid. 617(d), because Rollins could not observe the demeanor of the minor witnesses due to Rollins's video screen's failure. The trial court made the following finding on the record, outside the presence of the jury:

THE COURT: The Court will deny the motion for directed verdict that was just renewed at the close of the defense case. And the Court will also deny the motion for mistrial.

First, the Court removed the defendant from or allowed the defendant to be removed from the courtroom rather than watching it on the TV with the jurors because the Court did not want to highlight the fact that the defendant was being separated from the witness. And [I] went to great length to insure that the defendant was not prejudiced by the procedure and that the defendant had audio/visual feed of the testimony of the child witness, plus instant

---

[4]Ms. Jones is the assistant district attorney.

5

communication with counsel. That the defendant was seated across – on the other side of a wall, ten feet from Defense counsel. And the Court allowed Defense counsel to confer liberally with his client.

If there was a technical difficulty with the defendant actually observing the testimony, certainly, it should have been brought to the Court's attention in a manner that would have enabled the Court to deal with that, rather than brought up at this point.

¶6. Willie Harrison, the bailiff, was in the separate room with Rollins during the minors' testimony. At the trial judge's request, Harrison testified as to what he observed during the minors' testimony. Harrison stated that Rollins in fact observed no visual feed; however, the audio feed worked properly. The trial judge went on the record again:

THE COURT: All right. Thank you.

The Court will deny the motion for mistrial, and I find the objection is untimely. Again, the time to have raised that would have been while it was going on, while the Court could address it. There was a clear audio feed and there was communication and frequent consultation between defendant's counsel and his client during that testimony.

MR. BURGHARD: And, for the record, Defense counsel will stipulate that there was clear communication, there was free flow going back and forth. Counsel and defendant did not observe any visual feed in the room that was unimpeded from communication with his client.

THE COURT: And I think [Harrison's] testimony states clearly that there was no visual feed. But I think the capability we maybe thought existed.

¶7. After jury instructions and closing arguments, the jury began deliberations. After deliberating for approximately one hour and thirty-five minutes, the jury sent a note to Judge Taylor, who then had a conference with the attorneys and the defendant. The following discussion occurred:

6

THE COURT:  For the record, I will, of course, include this document as part of the record.  I will also read into the record the received communication from the jury approximately one hour and thirty minutes after the jury began deliberations.  And the note says this:

> Dear Judge, We know the prohibition you told us up front about not having access to the transcript.  We are asking for a re-ruling on that portion of the testimony only.  Due to the lousy video and audio of the two children's in-court testimony, could we please have access to the recorded testimony only?  The Jury.

And, for the record, of course, we do not have a tape, it was a live feed from chambers of the children who were testifying to the courtroom.  And there is, of course, no transcript available for them to review that or any other portion of it at this point.  Which raises the obvious concern about the jury's complaints about the audio and video quality of the transmitted testimony.

Counsel, my thought is to send them a note that says the broadcasted testimony was a live feed only.  There is no tape.  The court reporter's notes cannot be immediately transcribed.

MS. JONES:  That is fine.

MR. BURGHARD:  We believe that's what is appropriate at this point.

. . . .

MR. BURGHARD:  The concern that I'm left with at this point is . . . .  It sounds like the gist of it is what they're saying is they were not able to hear the entire testimony of the two children.

. . . .

THE COURT:  And in a complex case, jurors are fairly quick to focus on the pivotal testimony.  In any sort of case (sic).  And I think part of what happens in a jury room – this is, of course, rank speculation because I have never been in one – but is they focus on a pivotal portion of that testimony.  And, obviously, jurors' opinions, recollections of that may differ, regardless of whether it was transmitted by video or whatever.

7

And then it's like, show us something, give us something, you know, resolve our jury question, which is their job to resolve. So, I mean, it's not uncommon that the jurors want to go back and revisit something, didn't completely understand something. But I think part of that is the natural function of the jury.

¶8. Upon conferring with his client, counsel for Rollins made no objection. The trial judge's written response was sent to the jury, which in due course unanimously found Rollins guilty on all counts of the indictment. The trial judge held a sentencing hearing on November 15, 2006, at the conclusion of which the trial judge sentenced Rollins to serve life imprisonment as to count one, fifteen years as to count two, and 364 days each as to counts three and four, with all counts running consecutively. On December 15, 2006, Rollins filed a motion for a new trial, which the trial court denied by order entered on January 22, 2007. Rollins timely perfected his appeal to this Court.

## DISCUSSION

¶9. Even though Rollins raised four issues in his motion for a new trial, he assigns but one issue for us to consider on appeal. Rollins asserts that the trial court erred in denying his motion for a new trial inasmuch as he was denied his Sixth Amendment right of confrontation due to the video/audio equipment failure during the minors' testimony. We restate the issue for the sake of today's discussion.

> **WHETHER THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR A MISTRIAL AND MOTION FOR A NEW TRIAL.**

¶10. "This Court has held that '[w]hether to grant a motion for mistrial is within the sound discretion of the trial court.'" ***Carpenter v. State***, 910 So. 2d 528, 533 (Miss. 2005) (quoting

8

*Pulphus v. State*, 782 So. 2d 1220, 1223 (Miss. 2001) (collecting authorities)). "Furthermore, 'the standard of review for denial of a motion for mistrial is abuse of discretion.'" *Id.* The standard of review for denial of a motion for a new trial also is abuse of discretion. *Withers v. State*, 907 So. 2d 342, 352 (Miss. 2005) (citing *Flowers v. State*, 601 So. 2d 828, 833 (Miss. 1992); *Robinson v. State*, 566 So. 2d 1240, 1242 (Miss. 1990)).

¶11.    Rollins argues that the trial court abused its discretion in failing to grant his motion for a mistrial and motion for a new trial[5] because he was denied his right to confront the witnesses against him in violation of his federal and state constitutional rights, inasmuch as he was unable to view the witnesses on the video screen and the jurors complained that they could not hear the witnesses' testimony. Rollins further argues that his counsel's objection was timely because his counsel did not know that Rollins could not view the screen because the equipment was turned off during the breaks when Rollins and his counsel conferred. Rollins argues in his brief to this Court:

> The defendant was denied *any constitutional ability* to confront the witnesses against him. A totality of the problems includes no video feed for the Defendant and repeated audio problems for the Defendant and the Jury. By any reasonable standard, the Defendant was denied *any ability* to be confronted by his witnesses.

(Emphasis added). Further, Rollins argues that these technical problems amounted to "a clear violation of the United States Constitution *without exception*." (Emphasis added).

---

[5]Rollins filed his appeal expressly pursuant to the trial court's denial of his motion for a new trial, and he states as his issue on appeal in his brief that "the trial court erred in denying appellant's Motion for New Trial." However, Rollins also mentions in his brief that he appeals the trial court's denial of his motion for a mistrial.

9

Finally, Rollins argues that the minors' testimony was in violation of Mississippi Rules of Evidence 617(d), which states:

> Closed circuit television testimony may be taken by any method not inconsistent with the Confrontation Clauses of the Constitution of the United States and of the State of Mississippi, the Mississippi Rules of Civil Procedure, the Mississippi Uniform Criminal Rules of Circuit Court Practice, and these rules. In the case of a criminal prosecution, after a determination that the defendant's presence would cause a substantial likelihood of serious traumatic emotional or mental distress to the child, the trial court may exclude the defendant from the room where the testimony is taken. In any such case in which the defendant is so excluded, arrangements must be made for the defense attorney to be in continual contact with the defendant by any appropriate private electronic or telephonic method throughout the questioning. The defendant, the court and the jury must be able to observe the demeanor of the child witness at all times during the questioning.

¶12. First of all, Rollins waived his right to claim error in the jury's inability to hear portions of the testimony, as his counsel, after conferring with Rollins, specifically declined to object. *Spicer v. State*, 921 So. 2d 292, 309 (Miss. 2006) (citing *Williams v. State*, 684 So. 2d 1179, 1203 (Miss. 1996)). However, procedural bar notwithstanding, the record reveals that the trial judge's court administrator was in the courtroom with the jury during the closed-circuit testimony of the minor children, and that the court administrator was to immediately inform the trial judge if technical difficulties arose so that the problems could be remedied and questions and responses could be repeated.

¶13. On the issue of utilizing closed-circuit testimony of minor children, the United States Supreme Court held in *Maryland v. Craig*, 497 U.S. 836, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990), that the use of closed-circuit television with the testimony of minor witnesses is not in conflict with the Confrontation Clause.

The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

. . . .

We have never held, however, that the Confrontation Clause guarantees criminal defendants the *absolute* right to a face-to-face meeting with the witnesses against them at trial.

. . . .

The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.

. . . .

[W]e have never insisted on an actual face-to-face encounter at trial in *every* instance in which testimony is admitted against a defendant.

. . . .

In sum, our precedents establish that "the Confrontation Clause reflects a *preference* for a face-to-face confrontation at trial," (emphasis added; footnote omitted), a preference that "must occasionally give way to considerations of public policy and the necessities of the case."

. . . .

Thus, though we reaffirm the importance of face-to-face confrontation with witnesses appearing at trial, we cannot say that such confrontation is an indispensable element of the Sixth Amendment's guarantee of the right to confront one's accusers.

*Id.* at 844-50 (citations omitted). The United States Supreme Court went on to discuss

Maryland's statute at issue:

We find it significant, however, that Maryland's procedure preserves all of the other elements of the confrontation right: The child witness must be competent to testify and must testify under oath; the defendant retains full opportunity for contemporaneous cross-examination; and *the judge, jury and defendant are able to view (albeit by video monitor) the demeanor (and body) of the witness as he or she testifies.*

11

*Id.* at 851 (emphasis added). Thus, Rollins argues that he had an absolute right to view the demeanor of the minor witnesses, and since he did not have that opportunity, he was unconstitutionally denied a fair trial. However, in order to receive a new trial, Rollins must show that the denial of his right to view the demeanor of the minor witnesses prejudiced him. Rollins does not argue that he was prejudiced in any way; instead, Rollins incorrectly argues that his right is "without exception." "Assertions of error without prejudice do not trigger reversal." ***Jones v. State***, 912 So. 2d 973, 977 (Miss. 2005) (citing ***Nicholson ex rel. Gollott v. State***, 672 So. 2d 744, 751 (Miss. 1996)).

¶14.    Accordingly, since Rollins does not argue that he was prejudiced or demonstrate how he was prejudiced, this argument is without merit.

## CONCLUSION

¶15.    For the reasons stated, the judgment of conviction and sentence entered by the Circuit Court of Lincoln County is affirmed.

¶16.    **COUNT I: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF TOUCHING A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNTS III & IV: CONVICTION OF CONTRIBUTING TO THE DELINQUENCY OF A MINOR AND SENTENCE OF THREE HUNDRED SIXTY-FOUR (364) DAYS, EACH COUNT, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES SHALL RUN CONSECUTIVELY.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY.**

12