FAIR, J.,
FOR THE COURT:
¶1. On November 1, 2012, Dale Miller filed for divorce against his wife, Jessica Smith, on the ground of spousal incarceration, or, in the alternative, irreconcilable differences. Dale also sought custody of their two children—Robert (“Smitty”) and Margaret.[1] The chancellor appointed a guardian ad litem (GAL), who ultimately *151 recommended that Dale be awarded custody of both children. The chancellor ruled contrary to the GAL’s recommendation, explaining her reasoning and discussing the Albright[2] factors in detail, and awarded Jessica custody of both children. Dale appealed. We affirm the chancellor’s judgment.
FACTS
¶2. Dale and Jessica began their relationship in 1998. Jessica already had a daughter, Kristen, from a prior relationship. She gave birth to Smitty in 2004. Dale assumed he was the father, although Dale’s name was not listed on Smitty’s birth certificate. When Smitty was a few months old, Dale was sent to prison and served eighteen months’ incarceration for violating his probation on a robbery conviction. Around that time, Jessica’s mother sought and obtained custody .of Smitty.[3] Dale and Jessica had an “on-again off-again” relationship over the next few years.
¶3. Dale and Jessica eventually married on January 27, 2009. Their daughter, Margaret, was bom on May 26, 2010. Just two months later, the couple separated. In 2012, Jessica violated her probation on a forgery conviction and was sent to prison. She gave birth to MiKayla in September 2012 while incarcerated. From May 2012 until November 2013, all of Jessica’s children lived with her father, stepmother, and mother in Mississippi.[4] Dale had no contact with any of-the children while Jessica was in prison, nor did he provide for them financially. In November 2012, Dale filed-for divorce and requested custody of Smitty and Margaret. Jessica’s father and mother intervened and requested DNA testing for both children. The tests revealed that Dale was Margaret’s biological father but not Smitty’s biological father.
¶4. Dale amended his complaint, alleging adultery and habitual-cruel and inhuman treatment. He also claimed in loco parentis status as to Smitty and MiKayla. Based on allegations that Dale had sexually abused Kristen, the court appointed á GAL for Smitty, Margaret, and MiKayla. The case was originally set for trial on April 28, 2014, but was continued for completion of the "GAL’s report.
¶5. On August 16,2013, Jessica’s parents filed an amended third-party complaint seeking custody of the children.[5] The chancery court awarded them temporary custody of all-three children. Dale-was: given supervised visitation, which later became more frequent at the GAL’s recommendation.
¶6. Before trial, Dale and Jessica agreed to a divorce based on irreconcilable differences, a division of marital property, and a termination of any claims of parental rights to MiKayla by Dale. They asked the chancery court to determine the care, custody, and support of Smitty and Margaret, to include college expenses.
¶7. On the first day of trial,- the GAL submitted a supplemental report setting out circumstances that had changed since her previous report. Because she did not have the opportunity to fully investigate those changes, she renewed her original *152 recommendation that Dale be awarded custody of both children.
¶8. The chancery court declined to follow the GAL’s recommendation, finding that Dale was not entitled to any parental rights nor any visitation with regard to Smitty, and awarding Jessica custody of Margaret.: Based on testimony indicating sexual abuse and advances toward Kristen and Margaret,[6] Dale was awarded supervised visitation with Margaret, age four at time of trial, and ordered to pay child support’ for Margaret. Both parties were, ordered to share in any future college expenses.
¶9. Dale filed a motion for a new trial, which the chancery -court denied. He then appealed to this Court.
STANDARD OF REVIEW
¶10. “The standard.of review in domestic-relations cases is ■ limited.” Arrington v. Arrington, 80 So.3d 160, 164 (¶ 11) (Miss. Ct. App. 2012) (citing In re Dissolution of Marriage of Wood, 35 So.3d 507, 512 (¶ 8) (Miss. 2010)). We will not disturb a chancellor’s findings unless they were manifestly wrong or clearly erroneous, or the chancellor applied an erroneous legal standard. Phillips v. Phillips, 45 So.3d 684, 692 (¶ 23) (Miss. Ct. App. 2010).
¶11. In appeals from child-custody decisions, our polestar consideration, like the chancellor’s, must be the best interest of the child. Montgomery v. Montgomery, 20 So.3d 39, 42 (¶ 9) (Miss. Ct. App. 2009) (quoting Hensarling v. Hensarling, 824 So.2d 583, 587 (¶ 8) (Miss. 2002)). “So long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor’s decision, this Court may not intercede • simply to substitute our collective opinion for that of the chancellor.” Hammers v. Hammers, 890 So.2d 944, 950 (¶ 14) (Miss. Ct. App. 2004) (quoting Bower v. Bower, 758 So.2d 405, 412 (¶ 33) (Miss. 2000)).
DISCUSSION
¶12. Dale.claims the chancellor erred in: (1) terminating Dale’s parental rights as to Smitty; (2) allowing Kristen to testify outside of Dale’s presence; (3) failing to grant a new trial after viewing the GAL’s supplemental report; (4) ruling contrary to the GAL’s recommendations; and (5) making her custody determination. We address each issue below,
1. In Loco Parentis
¶13. The chancellor found that Dale failed to establish in loco parentis status as to Smitty and thus was not1 entitled to any parental rights, including visitation.
¶14. The term in loco parentis means “in the place of a parent.” Farve v. Medders, 241 Miss. 75, 81, 128 So.2d 877, 879 (1961). “Any person who takes a child of another into his home and treats it as a member of his family, providing parental supervision, supportf,] and education, 'as if it were his own child, is said to stand in loco parentis.” W.R. Fairchild Constr. Co. v. Owens, 224 So.2d 571, 575 (Miss. 1969) (citing Farve, 241 Miss. at 81, 128 So.2d 877). A person standing in loco parentis is entitled to the custody of the child, as against third persons. Farve, 241 Miss. at 81, 128 So.2d at 879.
¶15. “Although this doctrine grants third parties certain parental rights, such rights are inferior to those of a natural parent. Thus, in a custody dis *153 pute between one standing ;in loco parentis and a natural parent, the parent is entitled to custody unless the natural-parent presumption is rebutted.” Davis v. Vaughn, 126 So.3d 33, 37 (¶ 12) (Miss. 2013). The doctrine, by itself, does not “overcome the natural-parent presumption, although it may be a factor in determining whether the, presumption has been rebutted.” Id.
¶16. The chancellor stated that after hearing from the witnesses, including Dale and Smitty, she did not believe a close relationship existed between Dale and Smitty that would rise to the level of in loco parentis. The chancellor also stated she believed that Dale knew he was not the father “very early on.” She noted that although Dale had provided Smitty some financial support throughout his life, Dale failed to establish he had a “parental relationship” with Smitty.
¶17. Dale is not biologically related to Smitty, and Smitty was born years before Dale and Jessica married. When Smitty was a few months old, Dale was sentenced to prison .for eighteen months. After he was released, Dale saw Smitty on occasion, although he admitted he did not visit Smitty while Jessica was in prison during 2012 and 2013. After careful review, we find substantial evidence exists in the record to support the chancellor’s decision.'
2. Kristen’s Testimony
1118. At,trial, Jessica’s daughter Kristen testified to several instances where Dale sexually harassed and/or abused her. The chancellor stated that due to the nature of the testimony, she preferred to clear the courtroom for Kristen’s interview, having present only the lawyers and the court reporter. The testimony was recorded, and a transcript appears in the record on appeal. Kristen testified that she went to the police to report one of the incidents (the police report was in evidence and part of the GAL’s report), but the police did not investigate further because there was no physical evidence of abuse. Also, the Mississippi Department of Human Services (MDHS) conducted an investigation (the report was also in the record and part of the GAL’s investigation) but found no physical evidence of sexual abuse. Kristen was cross-examined by Dale’s attorney, and Dale gave rebuttal testimony to his version of the events.
‘ ¶19. Dale argues the chancery court erred in allowing Kristen to testify outside of his presence. He specifically argues that doing so violated the confrontation clauses of both the United 'States and Mississippi Constitutions. He further argues 'thát his forced absence from the courtroom violated Mississippi Rules of Evidence 615 and 617.
¶20. The Confrontation Clause only applies to ■ criminal cases. “In all. criminal prosecutions .the accused shall have a right to be heard by himself or counsel, or both, to • demand the nature and cause of the accusation, to be confronted by the witnesses against him ;.. .’’ Miss. Const. art. 3, § 26 (emphasis added). So Dale’s first argument fails:
¶21. Article 3, Section 25 of the Mississippi Constitution simply provides that “[n]o person shall be- debarred from prosecuting or defending any civil cause for or against 'him or herself ... by him or herself, or counsel, or both.” Because Dale’s counsel was present during Kristen’s testimony, there was no violation of Article 3, Section 25.
• 1122. -Further, Dale’s argument that the chancery court violated Rule 617 is misplaced. No interview" was taken using closed-circuit television, as provided in *154 Rule 617.[7]
¶23. Dale asserts that Rule 615, commonly known as “the Rule,” and occasionally more properly “the exclusionary rule,” deprived him of due process. Rule 615 states:
At a party’s request, the court must' order witnesses excluded so that they cannot hear other witnesses’ testimony. Or the court may do so on its own. But this rule does not authorize excluding:
(a) a party who is a natural person
[[Image here]]
(Emphasis added).
¶24. The chancellor disregarded Dale’s objection to being forced to leave the courtroom during. Kristen’s .testimony. Because' Dale was a party, he argues that, under a strict interpretation of the Rule, the chancellor did not . have, the authority to exclude him from being present. The procedure used by the chancellor in this case (excluding parents and/or stepparents in basically an “in camera” proceeding) is common, either by agreement or without objection of parties, in custody cases. See Robison v. Lanford, 841 So.2d 1119, 1121 (¶ 21) (Miss. 2003) (holding that, as a matr ter of first impression, records of in-chambers interviews with children during child custody modification proceedings were required to be made).
¶25. There are exceptions to the Rule. For example, in Rule 617, parties who aré alleged to be guilty , of sexual abuse of a child may be excluded from the personal presence of children ages sixteen and under. M.R.E. 617. There is not, however, reported precedent of enforced exclusion of a party under the present circumstances of testimony by a seventeen-year-old stepchild.
¶26. In a number of criminal cases, our supreme court has found that failure of enforcement of the exclusionary rule does not automatically result in reversal, holding that prejudice must accompany failure to exclude. See Avery v. State, 119 So.3d 317, 320 (¶ 9) (Miss. 2013); Woulard v. State, 832 So.2d 561, 565 (¶ 13) (Miss. 2002). Here, Dale has failed to show how he was prejudiced from the chancellor’s error. Not only was his attorney present during Kristen’s testimony, he cross-examined Kristen. The chancellor also allowed Dale to give rebuttal testimony to factual assertions by Kristen. Consequently, we find that no reversible error has been shown under this issue.
3. New Trial
¶27. Dale claims the chancellor erred in refusing to grant a new trial under Mississippi Rule of Civil Procedure 59(a). We review the denial of a Rule 59 motion for abuse of discretion. M.C. Morris v. Inside Outside Inc., 185 So.3d 413, 417 (¶ 14) (Miss. Ct. App. 2016).
¶28. A party may only obtain relief on a Rule 59 motion upon showing: (1) “an intervening change in controlling law,” (2) “availability of new evidence not previously available,” or (3) the “need to correct *155 a clear error of law or to prevent manifest injustice.” Brooks v. Roberts, 882 So.2d 229, 233 (¶ 15) (Miss. 2004). Dale has failed to meet any of those requirements. Thus, we find the chancellor acted within her discretion when she denied his motion.
4. GAL Recommendation
¶29. Although the GAL recommended Dale be awarded custody, the chancellor ruled in favor of Jessica. Dale argues that the chancellor erred in ruling contrary to the GAL’s recommendation.
¶30. The chancellor was required to appoint the GAL based on allegations of abuse toward Kristen. See Miss. Code Ann. § 93-5-23 (Rev. 2013). The chancellor must “at least include a summary review of the recommendations of the guardian in the court’s findings of fact when the appointment of a guardian is required by law.” Floyd v. Floyd, 949 So.2d 26, 29 (¶ 8) (Miss. 2007). Further,'“if the court rejects the recommendations of the guardian, the court’s findings must include its reasons for rejecting the guardian’s recommendations.” Id.
¶31. During her bench ruling, the chancellor stated she had arrived at a different conclusion than the GAL. She based her decision on the testimony she heard during the trial, particularly Kristen’s testimony, and the reports detailing Kristen’s inter-, views with police and MDHS. The chancellor also specifically discussed the GAL’s recommendation and her analysis under each of the Albright factors. Because the chancellor met the statutory requirements, we find that she acted within her discretion in ruling contrary to the GAL’s recommendation.
5 Custody, Visitation, and College Support
¶32. Dale argues that the chancellor erred in awarding Jessica custody of Smitty and Margaret. He further argues the chancellor erred in restricting his visitation. As already stated, Dale failed to establish in loco parentis status as to Smitty. See supra at (¶ 17).
¶33. Because Margaret is Dale and Jessica’s biological child, the chancellor had to make an initial custody determination. She provided a thorough analysis of the Albright factors and found that they favored awarding custody to Jessica. Although not part of the chancellor’s analysis, we note that Jessica also had custody of Margaret’s three other siblings. See Moorman v. Moorman, 28 So.3d 670, 672 (¶ 7) (Miss. Ct. App. 2009) (holding, that “[t]he separation of siblings is not a separate Albright factor, but one factor [that] the chancellor may consider along with the .best interest of the child.”). Margaret had a close relationship with Kristen, as evidenced by Kristen’s testimony. The chancellor further found that supervised visitation was in Margaret’s best interest, based on the evidence of Dale’s sexual behavior. After careful review of the record, we find substantial evidence to support the chancellor’s decision.
, ¶34. Dale finally argues that the chancellor erred in establishing college support for Margaret. Dale and Jessica expressly presented this issue to the chancellor, and she divided- the future expenses evenly between Dale and Jessica. We find no error in the chancellor’s determination.
CONCLUSION
¶35. The chancellor committed no abuse of discretion in terminating Dale’s parental rights as to Smitty, refusing to grant a new trial, ruling contrary to the GAL’s recommendations, or making her' custody determination. She also committed no reversible error in allowing Kristen to testify *156 outside of Daleis presence. Accordingly, we affirm the chancellor’s judgment..
¶36, THE JUDGMENT OF THE CHANCERY COURT OF TATE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., ISHEE, CARLTON'AND GREENLEE, JJ., ■' CONCUR. BARNES AND WILSON, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J„ CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.

. Jessica had two other children, Kristen (whose real name is protected due to allegations of abuse) and MiKayla Smith. Neither was Dale’s biological child. Margaret’s identity is also protected because of allegations of abuse.

. Albright v. Albright, 437 So.2d 1003 (Miss. 1983).

. Smitty remained in her custody until 2010.

. Jessica’s parents are divorced. At the time of the hearing, her mother lived in Tennessee and her father lived with a new wife in Mississippi. From May 2012 to November 2013, Jessica’s mother temporarily moved to Mississippi and lived, with her ex-husband to care for the children.

.During the hearing, Jessica’s parents withdrew their request for custody.

. There was no mention of sexual abuse toward Margaret.until the'day of the hearing. Testimony revealed that Margaret had returned from Dále's home with a hiclcey ofi her mouth.

. Rule 617 provides:
(a) Grounds. On the motion of a person named in subdivision (b), or on its own, the court may order that a child’s testimony be taken outside the courtroom and shown in the courtroom by means of closed-circuit television if the court determines that:
(1) the child is under the age of 16 years;
(2) the testimony is that an unlawful sexual act, contact, intrusion, penetration, or other sexual offense was committed on the child; and
(3)there is a substantial likelihood that the child will suffer 'traumatic emotional or mental distress if compelled to testify:.
(A) in open court; and
(B) in a criminal case, in the presence of the accused.