# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CT-00330-SCT

*DALE PATRICK MILLER*

*v.*

*JESSICA DAWN SMITH*

## ON WRIT OF CERTIORARI

DATE OF JUDGMENT:             10/13/2014
TRIAL JUDGE:                  HON. VICKI B. DANIELS
TRIAL COURT ATTORNEY:         VANESSA WINKLER PRICE
COURT FROM WHICH APPEALED:    TATE COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:      JERRY WESLEY HISAW
                              WILLIAM BOLTON SEALE
ATTORNEY FOR APPELLEE:        CHARLES E. HODUM
NATURE OF THE CASE:           CIVIL - DOMESTIC RELATIONS
DISPOSITION:                  AFFIRMED - 10/26/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Dale Patrick Miller and Jessica Dawn Smith agreed to an irreconcilable-differences divorce, leaving to the Tate County Chancery Court issues of custody, care, and visitation of two children, Smitty and Morgan. Miss. Code Ann. § 93-5-2(3) (Rev. 2013). As to Smitty, the chancellor terminated Miller's parental rights because Miller was not the biological father of Smitty nor did he stand *in loco parentis* to Smitty. As to Morgan–the biological child of Miller and Smith–the chancellor awarded custody to Smith.

¶2. The Court of Appeals affirmed the chancellor's judgments. On petition for certiorari to this Court, Miller raises two issues: (1) whether the trial court erred in terminating his parental rights to Smitty; and (2) whether his right to confrontation under the Sixth Amendment to the U.S. Constitution and his right to be present under Article 3, Section 25 of the Mississippi Constitution were violated when the chancellor removed Miller from the courtroom during the testimony of Smith's oldest daughter of a previous relationship. We affirm, yet with respect to the second issue, we find it was error, but harmless, for the chancellor to remove Miller from the courtroom.

## FACTS AND PROCEDURAL HISTORY

¶3. Dale Miller and Jessica Smith began a romantic relationship in 1998. Smith had a daughter, Kristen,[1] from a previous relationship. In 2004, Smith had a son, Smitty. Four months after Smitty's birth, Miller went to prison for eighteen months. When Miller was released from prison, Smith was in rehabilitation. Smith's children were under the temporary custody of Smith's mother, Barbara Keller ("Smith's mother"),[2] so Miller stayed with Smith's mother and the children. Miller and Smith married in January 2009. A year later, the couple had a daughter, Morgan. A month after Morgan was born, a Tennessee juvenile court returned custody of Kristen and Smitty to Smith.

---

[1]We have continued to use the alias "Kristen" fashioned by the Court of Appeals because of the allegations of sexual abuse.

[2]The different names involved in this litigation are confusing. For simplicity, Barbara Keller will be referred to as "Smith's mother" or "Smith's parents" for Smith's mother and father.

¶4. In August 2010, Miller and Smith separated after Smith accused Miller of touching Kristen inappropriately. Smith reported the incident to the sheriff's department and to the Mississippi Department of Human Services (MDHS). MDHS found no evidence to prove "fondling or touching for sexual or lustful purposes" but restricted Miller to supervised visitation with the children.

¶5. Smith went to prison in 2012 for violating the terms of her probation stemming from her 2002 guilty pleas to forgery and three counts of theft in Tennessee. As a result, the children went to live with Smith's mother. Miller had no contact with the children while Smith was in prison, nor did he support them financially.

¶6. In November 2012, Miller filed for divorce and sought custody of Smitty and Morgan. Smith's parents moved to intervene and sought DNA testing. Both motions were granted, and the testing showed Miller as the biological father of Morgan only.

¶7. Miller thereafter amended his divorce complaint and claimed he stood *in loco parentis* to Smitty. Miller said he accepted and acknowledged paternity by signing the birth certificate and raising Smitty as his own. No one else claimed paternity, and Smitty knew no other father. Smith answered by accusing Miller of "cruel [and] unusual demeaning immoral abuse." She charged that she removed Miller from their home after he sexually assaulted Kristen.

¶8. Based on the abuse allegations, the chancellor appointed a guardian ad litem. In her preliminary report, the guardian ad litem recommended that Miller have custody of Morgan but made no recommendation as to Smitty. In September 2013, the chancellor entered a

3

temporary order (1) requiring Smitty and Morgan to remain with Smith's parents; (2) granting Miller visitation; and (3) ordering him to pay monthly child support for both children.

¶9. Before trial, the couple stipulated to an irreconcilable-differences divorce. Thus, the trial proceeded on custody, visitation, child support, health insurance, tax deductions, and college expenses for Smitty and Morgan.

¶10. During trial, Kristen testified that Miller had sexually abused her. Because Kristen was seventeen years old at the time, and because of the sensitive nature of her testimony, the chancellor removed Miller from the courtroom. Miller's attorney objected to his removal because the chancellor did not provide Miller with any method to observe Kristen's testimony. The chancellor overruled the objection, and Miller's attorney remained in the courtroom.

¶11. After the trial, the chancery court awarded Smith sole physical and legal custody of Smitty and Morgan. It found that all but three of the *Albright* factors favored Smith. *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983). The chancery court also terminated Miller's parental rights as to Smitty. According to the chancellor, "Miller is not the biological father of [Smitty], [he] has not established a prima facie case that he stands *in loco parentis* with [Smitty], and has not established that he had a relationship with [Smitty]." Because of the chancery court's "extreme concern" that Miller had "acted inappropriately" with Kristen, it granted him only supervised visitation with Morgan.

4

¶12. Miller appealed, and the case was assigned to the Court of Appeals. On November 14, 2016, the chancery court, in a different proceeding from the underlying appeal, awarded Miller custody of Morgan. Eight days later, the Court of Appeals rendered its decision in Miller's case. After the ruling by the Court of Appeals, Miller filed motions for rehearing and extraordinary relief to supplement the record with a copy of the custody order from November 14, 2016. The Court of Appeals denied supplementation because the motion was filed ten days after its decision was handed down.

¶13. Before this Court, Miller challenges the chancery court's and the Court of Appeals' judgments regarding Smitty. He raises two issues:

> (1) whether the chancellor abused his discretion in terminating Miller's parental rights to Smitty;

> (2) whether Miller's exclusion from the courtroom during Kristen's testimony warrants reversal.

## STANDARD OF REVIEW

¶14. "This Court's scope of review in domestic relations matters is limited." *Chesney v. Chesney*, 849 So. 2d 860, 862 (¶ 8) (Miss. 2002) (citing *Montgomery v. Montgomery*, 759 So. 2d 1238, 1240 (¶ 5) (Miss. 2000)). "[A]bsent an abuse of discretion, we will uphold the decision of the chancellor." *Hollon v. Hollon*, 784 So. 2d 943, 946 (¶ 11) (Miss. 2001). In other words, "[a] chancellor's findings of fact will only be reversed when the record possesses no credible evidence to support them." *Collins v. Collins*, 112 So. 3d 428, 433 (¶ 16) (Miss. 2013). "However, the chancery court's interpretation and application of the law

5

is reviewed under a de novo standard." ***In re Guardianship of Savell***, 876 So. 2d 308, 312 (¶ 4) (Miss. 2004) (citations omitted).

## DISCUSSION

I. **Whether the chancellor abused his discretion in terminating Miller's parental rights to Smitty.**

¶15.   Miller asserts that the chancellor erred in determining he did not stand *in loco parentis* to Smitty and, based on that determination, erred in terminating his parental rights. *In loco parentis* means "in the place of a parent." ***Farve v. Medders***, 241 Miss. 75, 81, 128 So. 2d 877, 879 (1961). It is defined as "one who has assumed the status and obligations of a parent without a formal adoption." ***Id.*** More specifically, "[a]ny person who takes a child of another into his home and treats it as a member of his family, providing parental supervision, support and education, as if it were his own child is said to stand [*in loco parentis*]." ***Logan v. Logan***, 730 So. 2d 1124, 1126 (¶ 8) (Miss. 1998) (citation omitted). Whether *in loco parentis* status exists is "a matter of intention and of fact to be deduced from the circumstances of the particular case." ***Farve***, 128 So. 2d at 879 (citation omitted).

¶16.   The chancellor, sitting as the finder-of-fact, determined that the circumstances of this case failed to confer *in loco parentis* status on Miller. And the Court of Appeals found substantial evidence within the record to support the chancellor's decision. ***Miller v. Smith***, 2016 WL 6876509, at *3 (¶ 17) (Miss. Ct. App. Nov. 22, 2016). First, when Smitty was only a few months old, Miller was sentenced to prison for eighteen months. After prison, Miller did not remain a constant in Smitty's life. According to Smith, Miller provided no financial assistance to Smitty before their marriage. Miller also admitted he did not visit Smitty while

6

Smith was in prison during 2012 and 2013. Smith's parents claimed that, after their 2012 motion for DNA testing, Miller had neither contacted nor supported the children in more than a year.

¶17. Miller correctly notes there is some support within the record for his standing *in loco parentis*. However, "[w]henever there is substantial evidence in the record to support the chancellor's findings of fact, those findings must be affirmed." ***In re Conservatorship of Bardwell***, 849 So. 2d 1240, 1245 (¶ 16) (Miss. 2003). As did the Court of Appeals, we find this record supports the findings of the chancellor.

¶18. Miller further argues, though, that the Court of Appeals erred by not considering this Court's decision in the case of ***In re Waites***, 152 So. 3d 306, 312 (¶ 15) (Miss. 2014). According to Miller, our decision there set forth factors to determine whether a step-parent can be put on the same level as the natural parent. What this Court held, though, was that "[*i*]*n loco parentis* can—in very limited, unique situations—sometimes be used to *help* rebut the natural-parent presumption." ***Id.*** But we have never suggested "that *in loco parentis* alone can rebut the natural-parent presumption." ***Id.*** Moreover, we reemphasized that "[t]he court may not consider granting custody to a third party, including one standing *in loco parentis*, unless and until the third party rebuts [the natural-parent] presumption." ***Id.*** at 311 (¶ 14). Miller did not rebut the natural-parent presumption. And we find substantial evidence within the record to support the chancellor's conclusion that Miller did not stand *in loco parentis*. Accordingly, we affirm the judgments of the chancery court and Court of Appeals on this issue.

## II. Whether Miller's exclusion during Kristen's testimony warrants reversal.

¶19. The issue regarding Miller's removal from the courtroom during the testimony of Kristen had relevance only while an issue existed concerning the custody of Morgan. A subsequent custody ruling of the trial court has granted custody of Morgan to Miller. We address the issue, though, because of conflicts in our caselaw as discussed below. *See Alford v. Miss. Div. of Medicaid*, 30 So. 3d 1212, 1214 (¶ 8) (Miss. 2010) (issue not moot if question concerns a matter "detrimental to the public interest that there should be a failure by the dismissal to declare and enforce a rule for future conduct.") (citation omitted).

*The Confrontation Clause of the Sixth Amendment*

¶20. Miller argues the Confrontation Clause of the Sixth Amendment applies in this case, even though it is a civil case. By its own language, the Confrontation Clause extends only to criminal cases. U.S. Const. amend. VI ("*In all criminal prosecutions*, the accused shall enjoy the right . . . to be confronted with witnesses against him . . . .") (emphasis added); *Hannah v. Larche*, 363 U.S. 420, 440, 80 S. Ct. 1502, 1513, 4 L. Ed. 2d 1307 n.16 (1960) ("[The Sixth] Amendment is specifically limited to 'criminal prosecutions' . . . ."). As the Court of Appeals correctly observed, "The Confrontation Clause only applies to criminal cases. . . . So [Miller's] first argument fails." *Miller*, 2016 WL 6876509, at *3 (¶ 17).

¶21. According to Miller, the Court of Appeals' decision is contrary to this Court's precedent. To support his argument, Miller relies on *In Interest of C.B.*, where we held "[t]his is not a criminal case, but we are of the opinion that the right of confrontation should be accorded to an accused parent in" youth-court cases. *In Interest of C.B.*, 574 So. 2d 1369,

8

1374 (Miss. 1990).[3] In a recent concurrence, though, Justice Beam wrote that our statement in **In Interest of C.B.** "was nonauthoritative dicta." **In re J.T.**, 188 So. 3d 1192, 1205 (¶ 71) (Miss. 2016) (Beam, J., concurring in part and result).

¶22. This Court cannot ignore the plain language of the Sixth Amendment, which limits its own application to "criminal prosecutions." To the extent we held in the case of **In Interest of C.B.**, 574 So. 2d at 1374, that the Sixth Amendment applies in civil proceedings, today we overrule it.

*Article 3, Section 25 of the Mississippi Constitution*

¶23. Miller argues his removal from the courtroom violated Article 3, Section 25 of the Mississippi Constitution. "No person shall be debarred from prosecuting or defending any civil cause for or against him or herself . . . by him or herself, or counsel, or both." Miss. Const., art. 3, § 25. The Court of Appeals rejected Miller's argument, finding no violation "[b]ecause [Miller's] counsel was present during Kristen's testimony . . . ." **Miller**, 2016 WL 6876509, at *4. However, the provision prohibits debarment of the individual "by him or herself." Miss. Const. art. 3, § 25. The presence of Miller's counsel did not cure the error that Miller, individually, was removed from the courtroom. As a result, a violation of Article 3, Section 25 occurred.

*Harmless-Error Analysis*

---

[3]This statement has been used in briefing before the U.S. Supreme Court in support of extending the Confrontation Clause into civil cases. *Brief of Amicus Curiae in Support of Petition* at 6, **Ohio v. Clark**, (No. 13-1352), 2014 WL 2612613, *6 (June 11, 2014) (citing **In Interest of C.B.**, "Mississippi courts have expressly held that the Sixth Amendment's Confrontation Clause affords *civil* litigants in child custody cases the right to confront witnesses against them.").

¶24. While the removal of Miller was error, the issue may be reviewed under harmless-error analysis. *Smith v. State*, 986 So. 2d 290, 300 (¶ 30) (Miss. 2008); *see also* *United States v. Pryor*, 483 F.3d 309, 312 (5th Cir. 2007).

¶25. First and foremost, while Miller was absent, his attorney was present during the entire questioning. And Miller fails to explain how the examination would have changed had he been present alongside his attorney. *See Jones v. State*, 912 So. 2d 973, 977 (¶ 16) (Miss. 2005) ("Assertions of error without prejudice do not trigger reversal.").

¶26. While a Sixth Amendment case, the decision in *Rollins v. State* is instructive on the issue of removing a defendant from the courtroom. *Rollins v. State*, 970 So. 2d 716 (Miss. 2007). In *Rollins*, the grand jury returned a multicount indictment charging the defendant with crimes related to sexual battery of children. *Id.* at 717 (¶ 2). The trial court allowed the children to testify through closed-circuit television. *Id.* at 717 (¶ 3). The defendant was removed from the courtroom to watch the television screen alone. *Id.* at 719 (¶ 5). However, technical difficulties arose, and the defendant was unable to view the witnesses on the screen. *Id.* at 721 (¶ 11). Because of the inability to see the witnesses and view their demeanor, the defendant raised confrontation issues, claiming a violation of his right required reversal. *Id.* at 722 (¶ 13). However, this Court held, "in order to receive a new trial, [the defendant] must show the denial of his right to view the demeanor of the minor witnesses prejudiced him." *Id.* The Court continued: "[S]ince [the defendant] does not argue that he was prejudiced or demonstrate how he was prejudiced, this argument is without merit." *Id.*

¶27. This Court finds that the same reasoning in the Sixth Amendment cases of *Jones* and *Rollins* should apply to Miller's objections under Article 3, Section 25 of the Mississippi Constitution. Smith must show how he was prejudiced by the procedure used by the trial court. *See Goins v. State*, 155 Miss. 662, 124 So. 785, 786 (1929) (holding a constitutional error "did not require a reversal, because it did not result in any injury to the defendant . . . .").

¶28. The trial court should have provided a mechanism, such as closed-circuit TV, for Miller to observe witness testimony when he was removed from the courtroom. However, as the U.S. Supreme Court has held, "most constitutional errors can be harmless." *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 1833, 144 L. Ed. 2d 35 (1999) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306, 111 S. Ct. 1246, 1263, 113 L. Ed. 2d 302 (1991)). We hold that, due to the lack of prejudice to Miller, Miller's erroneous removal was harmless.

## CONCLUSION

¶29. Accordingly, the judgments of the chancery court and the Court of Appeals are affirmed.

¶30. **AFFIRMED.**

**COLEMAN, MAXWELL AND CHAMBERLIN, JJ., CONCUR. BEAM, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. RANDOLPH, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED IN PART BY BEAM, J. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J. ISHEE, J., NOT PARTICIPATING.**

**RANDOLPH, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶31. I concur with Part I of the Majority opinion, but would respectfully find that the issue addressed in Part II is moot.

**BEAM, J., JOINS THIS OPINION IN PART.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶32. The chancellor's having ordered Dale Patrick Miller to absent himself from the courtroom with no ability to monitor the proceedings or consult with counsel violated Miller's rights guaranteed by Article 3, Section 25, of the Mississippi Constitution. I cannot join the majority's determination that this was harmless error. I would reverse and remand this case for a new trial.

¶33. Article 3, Section 25, of the Mississippi Constitution states: "[n]o person shall be debarred from prosecuting or defending any civil cause for or against him or herself, before any tribunal in the state, by him or herself, or counsel, or both." Miss. Const. art. 3, § 25. The word "'debar' means '1. To bar or exclude: shut out. 2. To forbid, hinder, or prevent.'" ***Dunn v. Yager***, 58 So. 3d 1171, 1189 (Miss. 2011) (quoting Webster's II New College Dictionary 290 (1995)). And "[t]o 'prosecute' means '1. To pursue or persist in so as to finish. . . . 3.a. To initiate legal or criminal court action against. b. To seek to enforce or obtain by legal action.'" ***Dunn***, 58 So. 3d at 1189 (quoting Webster's II New College Dictionary 888 (1995)). Thus, this Court has held "the plain language of Article 3, Section 25[,] lends itself to permitting a civil litigant, his or her counsel, or both, not only [to commence] the legal action, but also [to bring] it to completion." ***Dunn***, 58 So. 3d at 1189.

12

¶34. This Court has found that Article 3, Section 25, guarantees a civil litigant a constitutional right to participate in closing argument even though that litigant is represented by counsel. *Id.* And in a child-custody-modification case in which the minor child has been made a party, the Court of Appeals has found that, so long as the child remains a party, the chancellor's order prohibiting the minor child's attorney from consulting with the child about the trial violates Article 3, Section 25. *In re E.C.P.*, 918 So. 2d 809, 826–27 (Miss. Ct. App. 2005).

¶35. Article 3, Section 25, protects a litigant's right to hear an opposing witness's testimony and consult with his legal counsel about the same. A litigant's ability to consult with his attorney is such a fundamental component of our adversarial system of justice that it constitutes an essential element of a criminal defendant's competence to stand trial. *Sanders v. State*, 9 So. 3d 1132, 1135 (Miss. 2009) (quoting *Dusky v. United States*, 362 U.S. 402, 80 S. Ct. 788, 788–89, 4 L. Ed. 2d 824, 825 (1960)). A litigant who is denied the opportunity to observe or even hear a witness's testimony loses his ability to consult with his attorney about that testimony.

¶36. This is not to say that the Constitution guarantees a civil litigant the right always to be physically present in the courtroom. Our Rules of Evidence recognize that other means exist to provide litigants an opportunity to observe testimony while protecting witnesses from negative effects likely to be created by a litigant's physical presence. *See* Miss. R. Evid. 617. But Article 3, Section 25, requires trial judges to provide some workable mechanism for litigants to consult with counsel and to observe the testimony of every witness, in order to

13

make informed decisions as to whether or how to proceed "by him or herself, or counsel, or both." Miss. Const. art. 3, § 25.

¶37. Here, over Miller's objection, the chancellor failed to provide such a mechanism. Miller timely asserted his right to observe the alleged victim's testimony, but the chancellor excluded him from the courtroom without providing any way for him to observe the testimony or consult, contemporaneously, with counsel. This violated Miller's rights under Article 3, Section 25.[4]

¶38. Outside Miller's presence, the alleged victim testified not only about the alleged abuse, but also provided a lengthy account about Miller's relationship with Morgan and Smitty, the children whose custody was at issue. The chancellor ultimately held that Miller did not stand *in loco parentis* with Smitty and, against the recommendation of the guardian *ad litem*, denied his request for custody. The majority finds that Miller's exclusion from the courtroom was error, but then divines that Miller was not prejudiced by such exclusion. Our review of the record does not allow us to discern whether, had Miller been present for the alleged victim's testimony, he might have suggested cross-examination questions to his counsel concerning parts of her testimony. And we cannot say that he would not have chosen to cross-examine her himself. An inherent uncertainty arises when a trial judge unconstitutionally denies a litigant his right to participate fully in the trial court litigation. In

---

[4]I do not address a situation in which a litigant's conduct necessitates his or her removal from the courtroom for the purpose of maintaining order, since that factor was not present in this instance.

view of that uncertainty, we cannot know whether Miller's exclusion from the courtroom prejudiced or otherwise affected his defense.

**KING, J., JOINS THIS OPINION.**