# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

# NO. 2019-CA-01509-COA

# CONSOLIDATED WITH

# NO. 2016-CA-00672-COA

**TIFFANY SMITH GOSSETT**                                    **APPELLANT**

**v.**

**CHESTER L. GOSSETT IV**                                    **APPELLEE**

DATE OF JUDGMENT:              08/28/2019
TRIAL JUDGE:                   HON. VICKI R. BARNES
COURT FROM WHICH APPEALED:     WASHINGTON COUNTY CHANCERY
                               COURT
ATTORNEYS FOR APPELLANT:       NICK CRAWFORD
                               VICKI L. GILLIAM
ATTORNEY FOR APPELLEE:         TONYA P. FRANKLIN
NATURE OF THE CASE:            CIVIL - CUSTODY
DISPOSITION:                   AFFIRMED - 03/23/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

## BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.

## BARNES, C.J., FOR THE COURT:

¶1.    Tiffany Gossett appeals from the Washington County Chancery Court's judgment

granting permanent physical custody of Tiffany and Chester Gossett's only child, Laiklynn,

to Chester. This case originated as a divorce proceeding. Shortly after both parties filed for

divorce, Tiffany was awarded temporary custody of Laiklynn. Initially, the chancery court

denied Tiffany's and Chester's requests for divorce based on adultery and habitual cruel and

inhuman treatment. Chester appealed, and this Court reversed the chancery court's ruling

in part, remanding the case for reconsideration of Chester's adultery allegations.[1] On remand, the chancery court granted Chester a divorce based on adultery. Using the evidence obtained from the divorce hearing nearly three years prior, the chancery court awarded Chester temporary custody of Laiklynn but stated the custody arrangement would be re-examined in six months. The custody-review hearing occurred approximately one year later.[2] The chancellor stated she would not reweigh the *Albright*[3] factors and would only hear new evidence that developed since the temporary custody order on remand. After the hearing, the chancery court awarded Chester permanent physical custody of Laiklynn.

¶2.     Tiffany appealed, challenging the chancery court's grant of permanent custody to Chester. She also claims the chancery court erred in awarding temporary custody to Chester based on "stale evidence" without granting Tiffany a hearing on any "newly discovered" evidence under Mississippi Rule of Civil Procedure 59. Tiffany requests this Court reverse and render the chancery court's grant of permanent physical custody to Chester or reverse and remand for a new hearing on custody. Finding no error, however, we affirm the grant of permanent custody to Chester.

## FACTS AND PROCEDURAL HISTORY

¶3.     The parties married in 2007 after dating for about two years. Before Tiffany married

---

[1] *Gossett v. Gossett*, 248 So. 3d 923, 924 (¶¶1-2) (Miss. Ct. App. 2018).

[2] By this time, the chancellor for the divorce proceedings (Chancellor Marie Wilson) had retired, and a different chancellor (Chancellor Vicki Barnes) heard the custody-review proceedings.

[3] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

2

Chester, she was aware that he had been convicted of murder in 1992 and served thirteen years in prison before being released in 2004.[4] Chester is on lifetime supervised parole. Their only child, Laiklynn, was born in June 2011. About a year later, the couple bought a house in foreclosure two doors down from the home of Chester's mother in Greenville, Mississippi. However, Tiffany did not get along with her mother-in-law, and Chester was aware that Tiffany had not wanted to move so close to her. The house is in Tiffany's name and had $36,000 in equity at the time of the divorce hearing. Usually, Tiffany paid the mortgage, and Chester paid the insurance. Neither party had paid property taxes for the last few years.

¶4. Chester's mother was a retired teacher and provided child care for the couple until February 2015 when Laiklynn began attending Tender Ages Christian Academy in Greenville. Tiffany primarily paid her tuition. At some point Tiffany also obtained health insurance for Laiklynn.

¶5. Both parties earned bachelor degrees from Mississippi Valley State University. Chester received his degree in 2007. In April 2013, Chester began working at Allegiance Specialty Hospital as a materials manager assistant. Prior to that job, he worked at a local community action agency for three years before being laid off. Since October 2015, Tiffany has been employed as a sales associate at AT&T. Prior to that position, Tiffany had at least four jobs over a six-year period from which she has been terminated.

¶6. The parties' marriage began to disintegrate around March 2014. Tiffany began

---

[4] The Mississippi Supreme Court affirmed Chester's conviction in *Gossett v. State*, 660 So. 2d 1285 (Miss. 1995).

staying out late several times a week without telling Chester her whereabouts while Chester stayed home and cared for Laiklynn. When Tiffany was at home, she would often isolate herself from Chester and Laiklynn, and engage in conversations and text messages on her cell phone. Chester complained that Tiffany also quit performing her "wifely duties" such as laundry, cooking, companionship, and sex.

¶7. In November 2014, the parties separated. Chester began living with his mother, while Tiffany and Laiklynn stayed at the marital home. In March 2015, Chester filed for divorce, and in April 2015, Tiffany answered and filed a counterclaim for divorce. Both parties alleged adultery, cruel and inhuman treatment, or, in the alternative, irreconcilable differences.

¶8. Regarding her claim of adultery, Tiffany stated that shortly before purchasing the marital home in 2012, she found Chester at her girlfriend's apartment. Chester and her girlfriend work together, and Tiffany believed she had caught him committing adultery. Chester claimed Tiffany was having an affair with a former male co-worker named Marcus who lived in Maryland. Chester said Tiffany routinely stayed out until three or four o'clock in the morning. In January 2015, Chester caught Tiffany after midnight at Harlow's Casino in Greenville accompanied by Marcus. That evening, Chester had become suspicious when a casino charge was put on the Gossetts' joint bank account that was the same amount as a casino hotel-room charge. The next morning, Chester photographed Marcus leaving the casino hotel carrying what he claimed was Tiffany's pink overnight bag. Marcus left in Tiffany's vehicle. Tiffany admitted to gambling with Marcus that night but denied having

4

an affair.

¶9.     Regarding her claim of cruel and inhuman treatment, Tiffany stated that her confrontations with Chester became violent on a few occasions.  Chester claimed that Tiffany continually threatened to call the police or his parole officer, fabricating accusations of assault that could cause his parole to be revoked and him to serve a life sentence in prison.

¶10.     A few months after Chester's filing for divorce, the chancery court entered an order for temporary relief on June 30, 2015, granting Tiffany temporary custody of Laiklynn and Chester scheduled visitation.  On January 26, 2016, a final hearing for divorce was held before Chancellor Wilson.  On March 9, 2016, the chancellor issued a final judgment, denying the parties' requests for a divorce and terminating the temporary-relief order on custody.  Because the final judgment denied the requests for divorce, there was no analysis of the evidence regarding custody of Laiklynn.  The parties remained estranged, and Laiklynn continued to reside with Tiffany.  Chester appealed the denial of his request for divorce, arguing he provided sufficient evidence to establish both fault-based grounds. *Gossett*, 248 So. 3d at 924 (¶1).  This Court affirmed the chancery court's ruling in part but reversed on Chester's adultery claim, remanding the case with specific instructions for the chancellor to re-examine witness credibility and conflicts in the evidence on the claim.  *Id.* at 928 (¶¶2, 19).

¶11.     Upon remand, on July 31, 2018, Chancellor Wilson entered an order and final judgment, changing her previous decision of March 9, 2016, and granting Chester a divorce from Tiffany based on adultery.  The chancery court also granted temporary custody of

Laiklynn to Chester after applying the *Albright* factors to the evidence obtained from the hearing on January 26, 2016. The court found three of the *Albright* factors favored Chester—continuity of care prior to separation, employment, and stability of the home environment and employment. No factors specifically favored Tiffany except "other relevant factors" related to the parent-child relationship. The chancellor commented that "[h]aving observed the demeanor and attitude of [Chester]," she was concerned that even though the *Albright* factors clearly favored him, "his obvious intent is to punish the mother by alienating the child from her mother, and . . . have his mother raise the child." The court found this result would not be in the best interest of the child and therefore awarded only temporary custody to Chester, with the determination to be revisited in six months.[5]

¶12. On July 30, 2018, Chester was suddenly terminated from his job at Allegiance, where he had been employed for over five years. Tiffany claims Chester was fired because it was discovered he had not disclosed his felony conviction on his initial employment application. A letter from the company to Tiffany's attorneys dated October 2018 confirmed Chester was "terminated/released" because he was "a convicted felon which goes against the standard of operation for Mississippi hospitals." However, Chester claims he did disclose his conviction of murder on his application and had a background check placed in his personnel file. Indeed, the record corroborates Chester's claim.[6]

_____

[5] Because the hearing date fell on a state holiday, it was continued and not held until June 26, 2019, before Chancellor Barnes because Chancellor Wilson retired in December 2018.

[6] The Mississippi Department of Health sent a letter to Delta Regional Medical Center in April 2013, when Chester started working at Allegiance, stating it processed his criminal

¶13. In response to the order and judgment on remand, on August 10, 2018, Tiffany filed a motion for an emergency hearing[7] based upon "newly discovered evidence," a motion to set aside the final judgment on remand, and a motion requesting a new trial, all under Rule 59. The chancery court denied her request for an emergency hearing on custody but did order "a custody review hearing . . . regarding the concerns of the court as expressed in the Final Judgment on Remand regarding the success or failure of the temporary custody order. . . ."[8]

¶14. In December 2018, Chester moved back into the marital home, where he has remained. Laiklynn has been in his custody since July 31, 2018. Since his job loss at the hospital, Chester started various entrepreneurial endeavors to earn a living.

¶15. The custody-review hearing was held on June 26, 2019, before Chancellor Barnes. She stated she would not reweigh the *Albright* factors analyzed by Chancellor Wilson at the

---

history record check. The letter stated Chester "may" have a disqualifying event and attached a report of an "FBI Response for Applicant Transaction." The three-page report showed Chester had an FBI record and rap sheet showing he was arrested in April 1992 for homicide, charged with homicide, and received a life sentence. Apparently, this letter and report did not prevent Chester from being hired by the hospital. At the custody-review hearing, Chester attempted to explain why his employer suddenly looked into his criminal background years after his hire, but the chancery court sustained defense counsel's objections based on hearsay.

[7] The request for an emergency hearing pertained to custody and a change in financial circumstances of the parties.

[8] The chancery court denied Tiffany's motions as they related to the court's finding of adultery and grant of divorce, but the court granted a remand hearing with regard to changes in the financial circumstances of the parties in the interim from March 2016 to this Court's June 2018 remand "in the interest of equity." The chancery court commented that "[b]asically, [Tiffany] is using the remand to request a new trial in order to introduce evidence that has occurred after the initial trial in this matter."

July 31, 2018 hearing and based upon evidence heard at the January 2016 divorce hearing, but she would hear any evidence "which had any bearing on the concerns of the court as expressed in its final judgment on remand, and which had any bearing on the success or failure of the temporary custody order." After the custody-review hearing, the chancery court issued a final judgment, awarding permanent custody of Laiklynn to Chester.

## STANDARD OF REVIEW

¶16. In child custody cases, the standard of review is limited. "We reverse only if a chancellor is manifestly in error or has applied an erroneous legal standard." *Lee v. Lee*, 798 So. 2d 1284, 1288 (¶14) (Miss. 2001). The chancellor has the sole responsibility to determine the credibility of the witnesses and the weight of the evidence. *Id.* We shall not disturb the chancellor's decision on custody matters "unless it is clear that justice and the law require us to do so." *Id.*

## ANALYSIS

¶17. We shall discuss the grant of permanent custody to Chester first and then discuss the chancery court's use of evidence that was nearly three years old to grant temporary custody to Chester. Finally, we shall analyze the chancery court's denial of Tiffany's motion for an emergency hearing to present "newly discovered evidence" pertaining to custody under Rule 59.

### I. Permanent Custody

¶18. Tiffany argues the chancery court improperly granted Chester permanent physical custody of Laiklynn in its August 28, 2019 order, which made the July 31, 2018 temporary

8

order on custody final.[9]  She also argues that there was not substantial evidence presented at the June 26, 2019 custody-review hearing to support awarding permanent custody to Chester.

¶19.    "In child custody cases, the polestar consideration is the best interest of the child . . . ."  *Lee*, 798 So. 2d at 1288 (¶15) (citing *Sellers v. Sellers*, 638 So. 2d 481, 485 (Miss. 1994)).  The chancery court determines the child's best interest by analyzing the following factors:

> (1) age, health and sex of the child; (2) a determination of the parent that has had the continuity of care prior to the separation; (3) which has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties of parent and child; (7) moral fitness of the parents; (8) the home, school and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) stability of home environment and employment of each parent and other factors relevant to the parent-child relationship.

*Id.* (citing *Albright*, 437 So. 2d at 1005).  These factors are "not the equivalent of a mathematical formula," and custody determination "is not an exact science."  *Id.*  "[T]he chancellor has the ultimate discretion to weigh the evidence the way [she] sees fit" because "[t]he credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence, is primarily for the chancellor as the trier of facts."  *Johnson v. Gray*, 859 So. 2d 1006, 1013-14 (¶36) (Miss. 2003) (quoting *Chamblee v. Chamblee*, 637 So. 2d 850, 860 (Miss. 1994)).

---

[9] We shall discuss Chancellor Wilson's temporary-custody *Albright* findings as they relate to determining permanent custody.

¶20. On July 31, 2018, Chancellor Wilson granted Chester temporary custody in her order and judgment on remand, basing that decision on the evidence she heard at the January 26, 2016 hearing. The chancery court made detailed findings of the *Albright* factors, concluding that three factors favored Chester. On continuity of care prior to separation, while both parties had provided care for Laiklynn during this period, she was primarily in the care of Chester and his mother; so the chancery court favored Chester. Testimony showed Chester took Laiklynn to school, picked her up, fed and dressed her, helped her with homework, attended to her when sick, and took her to the doctor when necessary. Also, Laiklynn enjoyed being with her grandmother. Regarding employment of the parents, Chester's job at Allegiance Hospital working as a material manager assistant from 8:30 a.m. to 5:30 p.m. Monday through Friday was favored over Tiffany's retail sales-associate position at AT&T, where she worked from 8:30 a.m. to 6:30 p.m. (or sometimes 10:00 a.m. to 7:30 p.m.) Monday through Friday and every other weekend. The chancery court found stability of the home environment and employment of each parent also favored Chester, as he had worked at Allegiance (as of 2016) for the past three years and before that had worked at a community action agency for three years before being laid off. Tiffany, however, had been employed in at least four different jobs during the marriage over a six-year period from which she had been terminated. Further, her position at AT&T did not provide her the flexibility to come and go as much as Chester's position. The chancery court found no factors favored Tiffany except the catch-all "other relevant factors." Regarding this factor, the chancery court found that when the parties separated, Laiklynn lived with her mother,

and Chester provided no child support. Additionally, against Tiffany's objections, Chester purchased a house two doors down from his mother, knowing this action would cause "discord and friction in his household." Finally, Tiffany obtained health insurance for Laiklynn. The remaining *Albright* factors were deemed neutral. Importantly, both parents agreed the other was a good parent and loved Laiklynn.

¶21. It is worthwhile to discuss the chancery court's neutral finding on moral fitness since Chester was a convicted murderer on lifetime parole, and Tiffany was found to have committed adultery, which caused the breakup of the marriage. Tiffany complained that the chancery court granted Chester custody because of her adultery, giving this factor more weight than it was due. However, it would appear the chancery court scrutinized this factor among the other factors, and substantial evidence supported finding the factor to be neutral.

¶22. Although the chancery court found the *Albright* factors favored Chester, the court was concerned about Chester's alienating Laiklynn from her mother, and ordered a review of custody in six months to ensure that Chester's temporary custody award remained in the best interest of the child.

¶23. However, through no fault of the parties or the court, custody was not revisited until the hearing on July 26, 2019. Chancellor Barnes allowed the parties to present any evidence developed on custody since the July 31, 2018 order and judgment on remand that would have a bearing on the concerns expressed in that order regarding temporary custody. Further, the chancellor stated she did not intend to reweigh the *Albright* factors. After hearing the evidence, the chancellor found the best interest of the child was to award

11

permanent custody to Chester.

¶24. Tiffany argues the chancery court erred in awarding permanent custody to Chester because he does not have the financial ability to care for Laiklynn, who was nine years old in 2020, and because Chester was terminated from his job at the hospital on July 30, 2018, the day before he was awarded temporary custody. She claimed his only income was $387 per month in child support from her and various side jobs, which consist of a lawn-care service, delivering and moving furniture, photography, and being a handyman. Chester, however, testified he has always "maintained a stream of employment" and "been [his] own businessman" even when he was employed at the hospital. He claimed to earn $450 per week from his lawn-care service but did not specify how many weeks he worked per month. Further, he testified he earned $6,000 per year from his photography hobby. Chester also admitted he received food stamps but did not report income from his side jobs to the IRS. Tiffany insinuated that Chester falsified records to receive government assistance, but she did not provide any evidence to support her contention.

¶25. At the custody-review hearing, there was substantial evidence to show Chester could financially care for Laiklynn. Testimony showed the child was always clothed and groomed properly; Chester was a resourceful entrepreneur and always had a stream of income from his various jobs; Chester's utility bills were always paid; and the child excelled physically and academically. The court also recognized that Chester had the benefit of strong family support. Moreover, testimony showed that Tiffany tried to have the marital home foreclosed upon by refusing to pay the mortgage after entry of the judgment on remand, from July 31,

2018, until December 2018, while continuing to reside in the marital residence with her boyfriend, a drug felon. However, Chester assumed the mortgage payment during this time period to prevent foreclosure.

¶26. Additionally, Tiffany argued that at the June 2019 hearing the chancery court abused its discretion regarding Chester's credibility because he admitted to not reporting all his earnings from side jobs. Tiffany also questioned how a convicted murderer could be found credible and could be granted custody. It is well established that "the chancellor is vested with the sole authority and responsibility to assess witness credibility as no jury is present. The chancellor alone hears the testimony and sees the demeanor of the witnesses." *Culumber v. Culumber*, 261 So. 3d 1142, 1150 (¶24) (Miss. Ct. App. 2018) (quoting *White v. White*, 208 So. 3d 587, 594 (¶16) (Miss. Ct. App. 2016)). Both chancellors were able to observe Chester's demeanor and found him credible. There was no testimony that Chester was dishonest regarding his ability to care financially for Laiklynn, and the chancery court made no such finding. Moreover, both chancellors considered Chester's murder conviction in their custody analyses. Also, Tiffany knew Chester was a convicted murderer on lifetime parole when she married him and had a child with him, which would seem to negate her argument.[10] And, as Chester notes, a murder conviction does not necessarily impact credibility. Accordingly, the chancery court did not abuse its discretion in assessing Chester's credibility.

---

[10] Chester's parole officer testified that he was in the process of trying to change Chester's parole to unsupervised parole because Chester has had a "clear history" for over ten years.

¶27. The chancery court did not err in ultimately awarding Chester permanent physical custody. The decision was supported by substantial evidence. Both chancellors properly applied the *Albright* factors and evaluated what was in the best interest of the child.

## II. Temporary Custody based on "Stale Evidence"

¶28. Tiffany claims it was error to award Chester temporary custody of Laiklynn based upon the evidence from the January 26, 2016 hearing, which was nearly three years old and thus "stale."

¶29. Tiffany cannot now appeal issues related to the grant of temporary custody, as that custody determination was not final and thus not appealable. "A temporary custody order is not an appealable final order." Deborah H. Bell, *Bell on Mississippi Family Law* § 12.01[7][b], at 378 (3d ed. 2020) (citing *Michael v. Michael*, 650 So. 2d 469, 471 (Miss. 1995)). Tiffany admits as much in her reply brief, stating she could not appeal the issue of custody until final judgment was entered on August 28, 2019. Further, "[t]he chancellor decides the issue of permanent custody 'de novo' notwithstanding the prior entry of a temporary custody order." *Neely v. Welch*, 194 So. 3d 149, 160 (¶33) (Miss. Ct. App. 2015) (citing *Blevins v. Bardwell*, 784 So. 2d 166, 170 (¶14) (Miss. 2001)). Insofar as the chancery court's use of this evidence to determine permanent custody, we find no error.

¶30. As the chancery court noted in its order denying Tiffany's Rule 59 motions, a party is not automatically entitled to a new hearing when a case is remanded. *Darnell v. Darnell*, 234 So. 3d 421, 424-25 (¶13) (Miss. 2017). A hearing may be required when one is mandated by the appellate court or when financial circumstances have changed. *Yelverton*

*v. Yelverton*, 26 So. 3d 1053, 1057 (¶13) (Miss. 2010); *Rainer v. Rainer*, 393 So. 2d 475, 477 (Miss. 1981). However, neither of those situations are present here. Further, this Court did not remand the case for a custody determination, but to re-examine Chester's evidence of Tiffany's adultery. The parties presented their evidence on custody at the January 2016 hearing; therefore, the necessary evidence for custody was already before the chancery court. The chancellor made detailed findings in her final judgment on remand and only granted temporary custody to ensure the arrangement was in the best interest of the child. Moreover, at the time, Tiffany did not object to the grant of a temporary order over a permanent order of custody. We find no error with the chancery court's granting temporary custody to Chester based upon the evidence from January 2016, which was ultimately used to determine permanent custody.

¶31. Tiffany also accuses the chancery court of "sua sponte chang[ing] physical custody of th[e] child from the mother to the father" with the July 2018 grant of temporary custody.[11] However, this assessment of the chancery court's custody determination is inaccurate. The chancery court did not address the *Albright* factors in its March 9, 2016 final judgment, as she denied the parties' requests for a divorce. The chancery court properly addressed the factors in detail in its July 31, 2018 final judgment on remand, as has been discussed.

### III.    Motion for an Emergency Hearing and Rule 59 Motions

¶32. In an attempt to rectify the chancery court's use of allegedly "stale evidence" to

---

[11] According to the record, Tiffany had maintained custody of Laiklynn and lived at the marital residence from the time of separation in November 2014 until August 2018, when Chester was granted temporary custody. When the chancery court denied their divorce, the couple did not reunite.

determine temporary custody in its July 31, 2018 ruling, ten days later Tiffany moved for an emergency hearing to present her "newly discovered evidence" from January 2016 through August 2018. The motion was denied. On appeal, Tiffany argues that if the evidence enumerated in her motion was heard, certain *Albright* factors would not have favored Chester for temporary custody. She claims this motion, as well as her motion to set aside the judgment on remand and motion for a new trial under Rule 59,[12] were thus improperly denied.

¶33. This Court reviews the denial of a Rule 59 motion for an abuse of discretion. *Miller v. Smith*, 229 So. 3d 148, 154 (¶27) (Miss. Ct. App. 2016). "A party may only obtain relief on a Rule 59 motion upon showing: (1) 'an intervening change in controlling law,' (2) 'availability of new evidence not previously available,' or (3) the 'need to correct a clear error of law or to prevent manifest injustice.'" *Id.* at 154-55 (¶28) (quoting *Brooks v. Roberts*, 882 So. 2d 229, 233 (¶15) (Miss. 2004)). Under Rule 59, the trial judge has discretion to grant a new trial or to amend the judgment "if convinced that a mistake of law or fact has been made, or that injustice would attend allowing the judgment to stand." *McNeese v. McNeese*, 119 So. 3d 264, 272 (¶20) (Miss. 2013) (quoting *Rogers v. Morin*,

---

[12] Tiffany filed a motion for a new trial under Rule 59(a) or (d). Rule 59(a) provides that a new trial may be granted "in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of Mississippi." Further "in an action without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." Rule 59(d) provides that "[n]ot later than ten days after entry of judgment the court may on its own initiative order a new trial for any reason for which it might have granted a new trial on motion of a party." Alternatively, Tiffany filed a motion to alter or amend the judgment under Rule 59(e).

791 So. 2d 815, 822 (¶22) (Miss. 2001)). However, the supreme court has stated a motion for a new trial under Rule 59 based on newly discovered evidence "is an extraordinary motion, and the requirements of the rule must be strictly met." *Id.* (quoting *Smullins v. Smullins*, 77 So. 3d 119, 125 (¶23) (Miss. Ct. App. 2011)).

¶34. As stated earlier, Tiffany's motions to set aside the judgment and motions for a new trial under Rule 59 could not apply to the temporary custody ruling, as that custody ruling was not final at the time these motions were filed, unlike the rulings for divorce and property distribution. Further, Tiffany cannot now contest the denial of these motions by the chancery court's order of November 21, 2018, because that order was not a final judgment on custody. Therefore, Tiffany was not entitled to any relief under Rule 59 regarding custody, and the chancery court did not abuse its discretion in denying her motions.

¶35. Additionally, we find no error in the chancery court's denial of an emergency hearing on custody as it related to "newly discovered evidence" that Tiffany claims might have changed the *Albright* analysis and thus the custody determination. Under Rule 59, "[n]ewly discovered evidence is evidence that existed at the time of trial, but was discovered after trial; it does not include 'evidence that did not exist at the time of trial.'" *Lacoste v. Lacoste*, 197 So. 3d 897, 912 (¶55) (Miss. Ct. App. 2016) (quoting *In re V.M.S.*, 938 So. 2d 829, 834 (¶10) (Miss. 2006)). Tiffany did not present any new evidence that would qualify as "newly discovered evidence"; the evidence enumerated in her motion all occurred post-trial.[13]

---

[13] On appeal, Chester even suggests that Tiffany's arguments related to newly discovered evidence was better suited for a modification action, but at the time of the November 2018 order, custody modification would have been inappropriate because there had been no permanent custody determination to modify.

17

¶36. In ruling on Tiffany's request for an emergency hearing, the chancery court stated that to grant an emergency hearing for temporary custody, there must be an "urgent and necessitous circumstance" that would require a minimum showing of abandonment, desertion, abuse, neglect, or kidnapping. *Robinson v. Robinson*, 481 So. 2d 855, 856 (Miss. 1986); *Castleberry v. Castleberry*, 541 So. 2d 457, 459 (Miss. 1989). The chancery court found Tiffany did not present such circumstances to warrant an emergency hearing, and we find no error in this ruling.

¶37. Moreover, the chancery court heard all of the "newly discovered evidence" enumerated in Tiffany's motion at the custody-review hearing on August 28, 2019, and it did not change the chancery court's custody determination. Tiffany's evidence included the following: Chester's July 2018 termination from his employment at the hospital for allegedly misrepresenting his conviction for murder;[14] Chester's October 2017 assault of "an individual" at Walmart;[15] Chester's harassing Tiffany on social media; and Laiklynn's calling her mother crying while in Chester's custody. The remaining evidence had to do with Tiffany's financial support of Laiklynn and the household: Tiffany had paid the delinquent taxes on the marital residence; she had made repairs to the house; she had paid for Laiklynn's tuition for private school, health insurance, doctor's bills, extracurricular

---

[14] The circumstances surrounding Chester's termination were suspicious and in dispute; evidence that Tiffany was involved was presented at the custody-review hearing, but the chancery court deemed it inadmissible hearsay.

[15] Evidence presented at the custody-review hearing showed Chester engaged in a fistfight with one of Tiffany's ex-boyfriends. Chester was charged with simple assault, but the charge was later dismissed.

expenses, and social activities without assistance from Chester. Finally, Tiffany pointed out she had retained her job with AT&T.

¶38.   While the above evidence was not heard before the July 31, 2018 temporary custody order, it was heard at the June 26, 2019 custody-review hearing. Tiffany had the opportunity and presented most of this alleged "newly discovered evidence" at this hearing; therefore, it was considered in the chancery court's award of permanent custody. Tiffany argues that three of the *Albright* factors favoring Chester would favor her after Chester's termination of employment: employment of the parent and employment responsibilities, and stability of the home environment and employment of each parent. However, in spite of Chester's losing his job, the chancery court still found in the totality of the circumstances the best interest of the child was to award permanent custody to Chester. After our review, we find the chancery court did not abuse its discretion.

¶39.   In denying Tiffany's motions, the chancery court quoted the Mississippi Supreme Court that "the *Albright* factors may ebb and flow yearly, quarterly, monthly or even less" but that does not mean the *Albright* factors should be reweighed, or physical custody must change. *See Giannaris v. Giannaris*, 960 So. 2d 462, 468 (¶10) (Miss. 2007). The chancery court noted that the parties had an opportunity to present their evidence regarding custody, and temporary custody was based upon an analysis of all of the *Albright* factors. Thus, we conclude the chancery court did not abuse its discretion in denying these motions.

## CONCLUSION

¶40.   As is often the case in family law matters, the custody determination here was

complicated by the lengthy time this case has been litigated, beginning with the initial divorce hearing in January 2016 to the August 2019 final judgment on permanent custody. Yet we cannot say the permanent custody determination in favor of Chester was in error or did not take into account the totality of the circumstances or the best interest of the child. Accordingly, we affirm the judgment.

¶41. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. EMFINGER, J., NOT PARTICIPATING.**