LEE, P.J., for the Court:
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 1. Willie Common and Yolanda Common were married in 1994 and separated in 2004. Willie and Yolanda agreed to a divorce on the ground of irreconcilable differences. The parties agreed that Yolanda would have primary physical custody of the couple’s four minor children with Willie having visitation rights. The issues of alimony, property division, and child support were left for the chancellor’s determination.
 

 ¶ 2. The chancellor ordered Willie to pay $774.48 per month in child support and $28,000 in lump-sum alimony, payable in ninety monthly installments of $312 per month. Yolanda was awarded the marital home and property, the household furnishings, a 2003 GMC Envoy, a 1998 Mitsubishi, and her retirement account. Yolanda was also awarded responsibility for the debt on the marital home, lot, and GMC Envoy. Willie was awarded a 2002 Chevrolet Tahoe, a savings account, the cash he had on hand, and all personal property in his possession.
 

 ¶ 3. Aggrieved with the chancellor’s judgment, Willie now appeals, asserting the following: (1) the chancellor erred in granting temporary alimony; (2) the chancellor’s determination of marital property and valuation of the property was erroneous; and (3) the chancellor erred in awarding alimony to Yolanda.
 

 STANDARD OF REVIEW
 

 ¶4. “This Court will not disturb the findings of a [cjhancellor unless the [c]han-cellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.”
 
 Bell v. Parker,
 
 563 So.2d 594, 596-97 (Miss.1990).
 

 DISCUSSION
 

 I. TEMPORARY ALIMONY
 

 ¶ 5. Willie argues that the chancellor erroneously relied on a prior agreement made by his counsel without his knowledge as the basis for awarding temporary alimony.
 

 ¶ 6. A hearing was held on March 2, 2006, to determine temporary support. Willie asserts that the attorneys for the parties met privately in the judge’s chambers and agreed that Willie would pay half of the mortgage payment. Willie testified that he did not give his attorney permission to make such an agreement. Willie confronted his counsel, but his counsel did not return his phone calls. Willie later discovered that his attorney had been disbarred. An order was entered on September 14, 2006, stating that pursuant to the March 2, 2006, hearing, the parties had agreed on the issue of temporary support. The order also stated that Willie and his counsel had failed and/or refused to sign the order. The order stated that Willie was to pay Yolanda $305 per month in temporary support, which was half of the amount of the monthly mortgage payment.
 

 
 *62
 
 ¶ 7. We find that the temporary order has no bearing on this appeal. This appeal is from the order entered on February 29, 2008. Although Willie referenced the temporary order at the hearing, he made no objections to the order, and he did not seek credit for the amount he believed to be erroneous. The temporary order was not considered by the chancellor in determining alimony. “[W]here a [party] fails to object to an issue at the trial, the issue is waived on appeal.”
 
 Hillier v. Minas,
 
 757 So.2d 1034, 1041 (¶22) (Miss.Ct.App.2000). We find that this issue is barred as it is being raised for the first time on appeal.
 

 II. MARITAL PROPERTY
 

 ¶ 8. Willie argues that the chancellor erred in her identification and distribution of the marital assets. Specifically, Willie argues that Yolanda’s 2003 GMC Envoy was erroneously classified as marital property, and the chancellor relied on guess work to determine the value of the parties’ assets.
 

 ¶ 9. Before property is divided, it must be classified as marital or separate property under
 
 Hemsley v. Hemsley,
 
 639 So.2d 909, 914 (Miss.1994). Marital property is defined as “any and all property acquired or accumulated during the marriage.”
 
 Id.
 
 at 915. As for assets acquired after a couple separates, the supreme court has held:
 

 Assets acquired after an order for separate maintenance should be considered the separate property of the parties, absent a showing of either (1) contribution to the acquisition of the asset by the other spouse as contemplated in our decisions in
 
 Ferguson v. Ferguson,
 
 639 So.2d 921, 928-29 (Miss.1994), and
 
 Magee v. Magee,
 
 661 So.2d 1117, 1123 (Miss.1995) or, (2) acquisition of the asset through the use of marital property.
 

 Godwin v. Godwin,
 
 758 So.2d 384, 386 (¶ 7) (Miss.1999) (footnote omitted). This principle also applies to temporary support orders.
 
 Barnett v. Barnett,
 
 908 So.2d 833, 841 (¶ 17) (Miss.Ct.App.2005).
 

 ¶ 10. Although a date is not given, the parties are in agreement that the GMC Envoy was purchased by Yolanda after entry of the temporary order. No evidence was presented that Willie had contributed to the purchase of the vehicle or that he had acquired it as marital property through use. We agree with Willie that the chancellor erred in categorizing the GMC Envoy as marital property. But we find that the error was harmless as the GMC Envoy had a negative value. According to Yolanda’s 8.05 financial statement, the GMC Envoy was worth $21,000, and the debt owed was $22,000. Thus, Willie suffered no negative consequence due to its inclusion as marital property.
 

 ¶ 11. Willie next argues that the chancellor erred in her valuation of the marital assets, including the GMC Envoy and associated debt. Conflicting evidence was presented regarding the value of the marital assets. For example, Yolanda testified that the marital home was worth $22,000; her financial statement stated the value was $30,000; and in 2004, she claimed it was worth $59,000. The amount owed on the mobile home was $56,000. Willie testified that he had done an online appraisal which valued the home at $47,490. Willie attempted to present the online appraisal of the mobile home, but the chancellor would not allow it to be introduced into evidence on the ground that it was hearsay. The chancellor stated during the hearing, “if there is a conflict as to the value of this mobile home I’m going to order that it be appraised.” An appraisal was not ordered. As for the lot on which the home is located, Yolanda testi
 
 *63
 
 fied that it was worth nothing. She had originally placed a value of $7,000 on the lot. Willie estimated the lot was worth $8,000. The chancellor used an average of Yolanda’s value of zero and Willie’s value to determine the value was $4,000.
 

 ¶ 12. Willie argues that the chancellor committed reversible error by making a ruling on the value of the assets solely from the 8.05 financial statements filed by the parties. However, the chancellor cannot be blamed for the failure of the parties to present evidence of valuation. Faced with similar circumstances, this Court held as follows in
 
 Dunaway v. Dunaway,
 
 749 So.2d 1112, 1121 (¶ 28) (Miss.Ct.App.1999):
 

 [T]he chancellor, faced with proof from both parties that was something less than ideal, made valuation judgments that find some evidentiary support in the record. To the extent that the evidence on which the chancellor based his opinion was less informative than it could have been, we lay that at the feet of the litigants and not the chancellor. The chancellor appears to have fully explored the available proof and arrived at the best conclusions that he could, and we can discover no abuse of discretion in those efforts that would require us to reverse his valuation determinations.
 

 ¶ 13. It was not the chancellor’s duty to obtain appraisals of the marital property. Willie cannot now complain that the chancellor’s valuations are unfair when no reliable evidence of the value of the property was presented at trial. This issue is without merit.
 

 III. ALIMONY
 

 ¶ 14. Willie argues that if the chancellor would have properly considered the factors set out in
 
 Cheatham v. Cheatham,
 
 537 So.2d 435, 438 (Miss.1988), the award of lump-sum alimony would have been denied. Willie also argues that the chancellor failed to take into consideration his inability to pay.
 

 ¶ 15. The factors set out in
 
 Cheatham
 
 are as follows:
 

 1. Substantial contribution to accumulation of total wealth of the payor either by quitting a job to become a housewife, or by assisting in the spouse’s business.
 

 2. A long marriage.
 

 3. Where recipient spouse has no separate income or the separate estate is meager by comparison.
 

 4. Without the lump sum award the receiving spouse would lack any financial security.
 

 Id.
 
 (internal citations omitted).
 

 ¶ 16. The chancellor did not cite the
 
 Cheatham
 
 factors; rather, the chancellor cited
 
 Hemsley,
 
 639 So.2d at 912-13, which states the factors for awarding periodic alimony. However, we find sufficient findings of fact by the chancellor to support the award of lump-sum alimony based on the
 
 Cheatham
 
 factors.
 

 ¶ 17. The chancellor awarded Yolanda lump-sum alimony as an equalizer, since Yolanda was awarded the debt on the marital home and lot. The home was worth less than the amount owed. The chancellor noted that Yolanda worked three jobs, attended school part time, and cared for the children. At the time of the hearing, Yolanda had quit all but one job due to health issues of one of the children. The chancellor noted that given Yolanda’s current financial situation, Yolanda could not provide for her children with only the statutory child-support award. The chancellor found that Yolanda should not have to work extra jobs to provide for her children. The chancellor stated: “Since Yolanda ... has primary physical custody, she must have the time to devote to this task. She cannot provide care for the
 
 *64
 
 minor children if she is forced to spend all of her time working outside of the home.”
 

 ¶ 18. Willie argues that regardless of Yolanda’s financial situation, he lacks the ability to pay alimony. Willie testified that his monthly expenses including child-support payments outweigh his monthly income, despite receiving help with living expenses from his girlfriend. Both Yolanda and Willie have estates with negative values. However, Willie’s annual income at the time of trial was $51,000, and Yolanda’s annual income was $27,000. Willie’s income is substantially higher than Yolanda’s income, and he is in less debt than Yolanda. Also, Willie testified that he had a savings and retirement account. We cannot find that the chancellor was manifestly wrong or clearly erroneous in awarding lump-sum alimony to Yolanda. We find that Willie’s assertion that he lacks the ability to pay alimony is without merit.
 

 ¶ 19. THE JUDGMENT OF THE HOLMES COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.